

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 2 0 2007

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., AND EDWARD MANDEL, | § § § |
| Plaintiffs, | § § |
| | § CIVIL ACTION NO. _____ |
| | § |
| SUSMAN GODFREY L.L.P., OPHELIA F. CAMIÑA, BARRY C. BARNETT, FRANK NESE, JEFF LEMIEUX, AND JOHN NORMENT, | § **JURY TRIAL DEMANDED** § § **3-07CV1422-N** § § § |
| Defendants. | § § |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

Plaintiffs Positive Software Solutions, Inc. and Edward Mandel (collectively, "Plaintiffs")

file this Original Complaint against Defendants Susman Godfrey, L.L.P., Ophelia F. Camiña,

Barry C. Barnett, Frank Nese, Jeff Lemieux, and John Norment (collectively, "Defendants") for

fraud and civil conspiracy. Susman Godfrey, L.L.P. and the other co-Defendants conspired to

defraud Plaintiffs by intentionally making false representations of material facts and concealing

material facts in the civil action styled *Positive Software Solutions, Inc. v. New Century*

*Mortgage Corporation, et al.*, No. 03-CV-0257-N (the "Related Litigation"). As a result,

Plaintiffs have suffered and will continue to suffer tens of millions of dollars in damages. In

support of this Original Complaint, Plaintiffs would respectfully show the following:

---

# I.

## PARTIES

1.     Positive Software Solutions, Inc. ("Positive Software") is a Texas corporation having its principal place of business in Dallas, Texas.

2.     Edward Mandel is the Chief Executive Officer of Positive Software and can be contacted at 4939 Normandy Drive, Frisco, Texas 75034.

3.     Defendant Susman Godfrey L.L.P. ("Susman Godfrey") is a Texas limited liability partnership having a principal place of business at Suite 5100, 1000 Louisiana, Houston, Texas 77002-5096, where it may be served. Susman Godfrey also maintains a significant office in Dallas, Texas.

4.     Defendant Ophelia F. Camiña ("Camiña") maintains a residence at 4521 Bordeaux Avenue, Dallas, Texas 75205, where she may be served.

5.     Defendant Barry C. Barnett ("Barnett") maintains a residence at 4511 Arcady Avenue, Dallas, Texas 75205, where he may be served.

6.     Defendant Frank Nese ("Nese") is a resident of the State of California and maintains a residence at 1227 Surfine Way, Corona del Mar, California 92625, where he may be served.

7.     Defendant Jeff Lemieux ("Lemieux") is a resident of the State of California and maintains a residence at 29891 Weatherwood, Laguna Niguel, California 92677, where he may be served.

8.     Defendant John Norment ("Norment") is a resident of the State of California and maintains a residence at 12801 Bonita Heights Drive, Santa Ana, California 92705, where he may be served.

## II.

## JURISDICTION

9.      This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, as well as for fraud and civil conspiracy.  This Court's jurisdiction over this subject matter is proper under 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and this Court's pendent jurisdiction.

10.     Personal jurisdiction exists generally over Defendants because each Defendant has sufficient minimum contacts with the forum as a result of business conducted within this judicial district and as a result of availing themselves of the courts of this judicial district.  Many of the acts of fraud and the predicate acts of civil conspiracy took place – and fraudulent statements were made – in Dallas, Texas.

11.     Venue is proper in this Court because a substantial amount of the activities that give rise to this lawsuit related to judicial proceedings before this Court and at the offices of the American Arbitration Association ("AAA") in Dallas, Texas.  A majority of the fact witnesses and relevant documents are located within this judicial district.

## III.

## FACTUAL BACKGROUND

12.     The dispute between Plaintiffs and Defendants stems from Defendants' fraudulent conduct in a related civil action styled *Positive Software Solutions, Inc. v. New Century Mortgage Corporation, et al.*, No. 03-CV-0257-N ("the Related Litigation").  Specifically, Defendant Susman Godfrey, who served as lead counsel to New Century Mortgage Corporation ("New Century") in the Related Litigation, and the other co-Defendants, who were employees or agents of New Century or other defendants in the Related Litigation, conspired to defraud

Plaintiffs before this tribunal and the related Arbitration by intentionally concealing documents, willfully withholding material evidence, offering perjured testimony, and fraudulently misrepresenting facts to obtain a favorable ruling in the Arbitration.  But for these fraudulent acts and statements, Positive Software would have received and collected hundreds of millions of dollars on damages.

## A.   AN ENTREPRENEUR'S GROUND-BREAKING SOFTWARE

### 1.   Edward Mandel and Positive Software

13.     Positive Software was a leading provider of software solutions whose systems have been deployed by some of the foremost companies in mortgage banking, financial services, telecommunications, and other industries.

14.     Positive Software was founded in 1995 by entrepreneur Edward Mandel who is Positive Software's president and CEO.  Mr. Mandel received a B.S. in Computer Science and Electrical Engineering, and an M.B.A. in Information Systems from the University of Texas at Dallas.  When he founded the company, Mr. Mandel already had eight years experience in designing and implanting customer databases.  In 2004, Mr. Mandel was named a finalist by Ernst & Young LLP for the Ernst & Young Entrepreneur of the Year 2004 Awards in the Southwest Area.  Mr. Mandel was selected as a finalist in the Southwest Area by a panel of judges comprised of local community and business leaders.

15.     Until the sale of its assets due to Defendants' fraud, Positive Software was primarily engaged in the business of developing, marketing, and manufacturing computer software products used in the mortgage industry.   In fact, if not for the fraudulent and conspiratorial acts of Susman Godfrey and the other co-Defendants, Positive Software would

still be engaged in that business or would have sold that business for hundreds of millions of dollars.

**2.  "LoanForce" and "TeleTrend" – Building a Relationship Between Positive Software and New Century**

16.  One of Positive Software's products was a proprietary software system called TeleTrend.  TeleTrend generated and managed customer interactions in telemarketing call centers and retail divisions.  TeleTrend has generated substantial revenues for Positive Software's clients, including New Century.

17.  In 2000, Positive Software developed and introduced into the marketplace a new product called LoanForce 2000 ("LoanForce").  LoanForce was a proprietary "enterprise prospect marketing solution" software package for the customer-lending/mortgage-banking vertical market.  LoanForce was an improvement upon the TeleTrend system.

18.  Positive Software owned the proprietary software that comprises the TeleTrend and LoanForce systems.  That software is copyrightable subject matter under the laws of the United States.  Positive Software owns all copyrights to TeleTrend and LoanForce.

19.  Positive Software licensed the TeleTrend software to New Century—one of the defendants in the Related Litigation—in 1998.  For two years, New Century paid Positive Software for its license subscriptions to use TeleTrend.

20.  Once Positive Software created LoanForce in 2000, New Century wanted to upgrade its TeleTrend subscriptions to LoanForce.  Positive Software agreed to the upgrade, but maintained that the subscription for the LoanForce upgrade would remain active only if New Century continued to pay the annual regular maintenance subscription fees for the TeleTrend product.

**B.      A SORDID HISTORY OF FRAUD**

   **1.      New Century Enacts its Scheme to Exploit Positive Software's Trust**

   21.     Nese was a senior manager at New Century.   In November 2001, Nese approached Positive Software to request 600 additional user licenses for New Century.  Positive Software offered New Century a very low promotional price, but Nese and New Century rejected the offer.  Two weeks later, New Century unexpectedly terminated Positive Software's remote access to New Century's LoanForce system.  The termination prevented Positive Software from monitoring New Century's use of the LoanForce software on New Century's computer systems.

   22.     Further, in November 2001, Nese and others within New Century currently unknown to Positive Software devised a plan to pirate licenses to LoanForce and replicate the LoanForce source code.  Other individuals involved in this scheme to duplicate the copyrighted LoanForce software were Kirk Redding, Anne Breuer, Bill Chan, Thuy Cure, and John Shepard.

   23.     Oblivious to New Century's fraudulent copying scheme, Mr. Mandel and Positive Software continued to attempt to sell additional licenses to New Century.  Indeed, Nese and his cohorts within New Century continued to lead Mr. Mandel and Positive Software on, holding discussions during 2002 about the possibility of obtaining additional licenses for the LoanForce system and its applications for New Century and its retailers.

   24.     On December 18, 2002, Mr. Mandel met with Nese to discuss New Century's 2003 budget and needs for additional user licenses.  Nese represented that New Century did not expect enough growth to warrant purchase of additional user licenses.  Nese also referred Positive Software to Lemieux, the CEO of eConduit.com, a company that New Century Financial Corporation – a New Century associated entity – acquired in the beginning of 2002.  Nese said that all future license purchases would go through Lemieux.

---

25.     On December 19, 2002, Mr. Mandel met with Lemieux for the first time to discuss the LoanForce licenses and whether New Century needed additional licenses.  Promoting New Century's illegal copying scheme, Lemieux feigned interest in purchasing additional user licenses.  Lemieux asked for, and Positive Software unwittingly provided, confidential copies of the contract and product documentation.  Lemieux also asked if Positive Software could make an exception to its regular practice of annual subscription prices and let New Century pay twenty percent of the current 2003 license subscription by the end of 2002, and the remainder by January 20, 2003.  Because of their longstanding relationship, Positive Software agreed.  New Century, however, never honored the agreement.  Positive Software and Mr. Mandel later learned that New Century's proposals were simply a ruse to buy time to continue copying LoanForce copyrighted software code.

**2.      New Century's Treachery is Uncovered and Positive Software Attempts to Protect its Rights**

26.     In January 2003, Positive Software discovered that New Century had pirated approximately 1,000 LoanForce user licenses, considerably more than the 140 licenses that New Century had purchased.

27.     Furthermore, Positive Software learned that New Century was surreptitiously developing virtually identical LoanForce software called LoanTrack and mLOS.

28.     On January 28, 2003, Mr. Mandel conducted a teleconference with Nese and Lemieux.  Aware that the virtually identical mLOS software was not yet operational, Nese and Lemieux attempted to stall Positive Software's cancellation of the LoanForce license agreements. Nese and Lemieux needed some more time before the illegally-created mLOS software was ready.  Lemieux, in order to extend the LoanForce licenses a little longer until the mLOS

software was operational, informed Mr. Mandel and Positive Software that he was considering purchasing LoanForce software licenses for eConduit's thirty-agent call center.

29.     To protect New Century's ability to continue surreptitiously copying the copyrighted LoanForce software code, Lemieux stated that he had recommended that New Century Financial Corporation "look into using LoanForce in the branches." The expansion of LoanForce into the branches and eConduit was the "carrot" held out to Positive Software to extend the 140 LoanForce licenses until New Century's mLOS program could be completed.

30.     During the call, Mr. Mandel asked Nese for details about New Century's LoanTrack software system. Attempting to allay Mr. Mandel's suspicions, Nese lied, falsely declaring that LoanTrack had nothing to do with Positive Software's LoanForce software. Nese also falsely stated that LoanForce was not being used within the branch network. However, it is clear that the branches had access to LoanForce via LoanTrack.

31.     On February 6, 2003, Positive Software sued New Century, Nese, Lemieux, and other related defendants in U.S. District Court for the Northern District of Texas for, *inter alia*, copyright infringement, breach of contract, and fraud.

32.     New Century retained Susman Godfrey to represent it in that lawsuit. Specifically, Susman Godfrey partners Barnett and Camiña filed notices of appearances and served as lead counsel in the case.

## C.     THE TAINTED ARBITRATION AND ITS AFTERMATH

33.     On April 28, 2003, New Century persuaded the court to compel the parties to arbitrate their dispute under a Software Subscription Agreement between Positive Software and New Century.

---

### 1.      A Parade of Lies Before the Court and the Arbitrator

34.      On the day the Court ordered the parties to Arbitration, the Court also entered a protective order and granted a preliminary injunction against New Century ("the Order").  The relatively narrow scope of the preliminary injunction was based on material representations – representations later established to be false – that New Century and its counsel made to the Court.

35.      Under the Order, the New Century's outside counsel – Susman Godfrey – was prohibited from disclosing "Confidential Information" to New Century's employees.  The Order further enjoined New Century from any use of the LoanForce application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon.

36.      One week before the Order, anticipating the Court's prescriptions, New Century's lead counsel, Susman Godfrey's Barnett, represented in an April 21, 2003 letter to the Court that:

- New Century has no intention of ever again using LoanForce application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon.

- New Century would, no later than April 25, 2003 and under Dr. Pooch's supervision, delete or return to [Positive Software] all LoanForce software, including application software and the LoanForce database that New Century has the ability to access.

- New Century would not use LoanTrack-2 for telemarketing or any other commercial purpose before May 12, 2003.

37.      Barnett further represented that additional injunctive relief "is not necessary, and under Dr. Pooch's supervision, New Century removed any danger of imminent harm to [Positive Software's] legitimate interests."  This statement was false.

38.      In another fraudulent representation, Dr. Udo Pooch, New Century's expert, stated on April 24, 2003 that "New Century ceased using LoanTrack-1 and the LoanForce database ... commencing April 18, 2003."  According to Dr. Pooch, as of April 18, 2003, "no New Century-

Retail IT personnel had access" to the data from the LoanForce database." Dr. Pooch personally "supervised and observed the deletion of LoanForce, LoanTrack, LTK Moon and LF Moon. This was done following my direction and in my presence...." Finally, Dr. Pooch affirmed, "[b]ased on my professional opinion, New Century has satisfactorily cleansed itself of LoanForce, LoanTrack, LTK Moon and LF Moon."

39.     New Century's and Barnett's material representations affected the Court's decision concerning the scope of preliminary injunctive relief. New Century and Defendants intended to fraudulently persuade the Court that no further injunctive relief was necessary to protect Positive Software's installed software at New Century's facilities.

40.     Despite the assurances to the Court, New Century – with Defendants' knowledge – continued to use the LoanForce software. This initial fraudulent conduct unfortunately proved to be the tip of the fraud iceberg formed after New Century – with the assistance of Defendants – escaped this Court and were allowed to literally run amok in the loosely controlled environment of the Arbitration.

**2.     Defendants' Misstep**

41.     During the Related Litigation, New Century and Defendants inadvertently produced to Positive Software a confidential copy of an analysis that New Century and Defendants secretly performed on LoanForce and LoanTrack. New Century and Defendants never intended to disclose their unauthorized use of LoanForce after entry of the Protective Order and preliminary injunction, and sought return of the accidentally produced document.

42.     Following that inadvertent production, Defendants misleadingly described their improper use of LoanForce to the Court as minimal. New Century's Chief Technology Officer

for their Retail Division, Norment, admitted that he had access to Positive Software's confidential source code in November 2003:

> In November 2003, as part of New Century's trial preparation, and in order to assist New Century's counsel in the case, I created a workbook using Microsoft's Excel spreadsheet program that compared the Loanforce database schema to the database schema for products New Century had created, including the LFMoon database, the LTKMoon database, and the LoanTrack (for LoanTrack-1) database. In doing this work, I used the same database schema for the databases that New Century produced to Positive in this litigation on April 9, 2003. I did not use any material produced in this litigation by Positive.

43.    In a subsequent letter to the Court, dated January 15, 2004, Barnett provided additional information about Norment's access to the Loanforce database:

> [W]e understand that Mr. Norment first obtained access to the compact disks containing [the] LoanForce database on June 16, 2003, when he signed the CD out from the New Century legal department, which was maintaining the CD and the forensic images that had been created under the supervision of Dr. Pooch. Mr. Norment signed the CD back in on July 10, 2003.... Mr. Norment may have kept a copy of the CD's contents on his "personal" sector of a New Century server....

In the same letter, lead counsel explained that "Mr. Norment suggested the idea of comparing the code and reporting the results to counsel, and counsel agreed that such a comparison might be useful and directed him to create it for purposes of investigating the facts underlying Positive [Software]'s allegations of copying."

44.    It was clear that the person (Norment) in charge of New Century's efforts to reverse engineer Positive Software systems – the very person who should not have had Positive Software's software – did in fact have access to it. The discovery of New Century's and Defendants' deceptive practices and fraudulent misrepresentations – precipitated by the inadvertently produced document – prompted the Court to take the drastic measure of compelling New Century and Defendants to produce relevant privileged documents based on the crime-fraud exception. The Court found that New Century's and Defendants' fraudulent conduct

qualified for the crime-fraud exception and overruled New Century's objections to producing privileged documents.

45. The Order, though, was too late. On May 5, 2004, the Arbitrator Peter J. Shurn, III, granted an arbitration award in favor of the New Century ("the Award").

### 3. The Truth Comes Out After the Arbitration

46. The Award was based in large part on factual grounds that were later proven to be false and based upon fraud and perjury by the Defendants. It was later proven that Susman Godfrey and the other Defendants made material misrepresentations and fraudulently concealed material evidence from Positive Software and the Arbitrator.

47. On August 24, 2004, New Century and Susman Godfrey – themselves represented by independent counsel at this point – produced over 36,600 computer files pursuant to this Court's Order on April 21, 2004 and Magistrate Judge Ramirez's Order on August 2, 2004. The scope of the Orders related to potential post-injunction use of Positive Software's software by New Century in violation of the preliminary injunction and U.S. copyright law.

48. New Century's belated production of 36,600 computer files revealed highly relevant documents – never produced in the Arbitration – that exposed New Century's and Defendants' civil conspiracy, and the pervasive perjury and fraud in support of it. Positive Software's discovery efforts following the Arbitration Award revealed New Century's and Defendants' deliberate and willful efforts to conceal material evidence during the Arbitration and to provide false testimony.

**D.**    **"WINNING IS EVERYTHING"[1] – A LAW FIRM'S HUBRIS CROSSES THE LINE**

**1.    New Century's and Defendants' Labyrinth of Lies and Hidden Evidence**

49.    New Century's and Defendants' post-Arbitration production of documents demonstrate an extensive conspiracy by New Century that was actively supported by their counsel – Barnett and Camiña, partners in Susman Godfrey – to intentionally misrepresent facts, fraudulently hide damaging evidence that would have disproven New Century's claims before the Arbitrator and the offer of clearly perjurious testimony.    These belatedly-produced documents establish that the statements New Century and its counsel made both to the Court and the Arbitrator were false and intentionally deceptive and that there was a concerted effort to purposely conceal material evidence.

**(a)    First fraudulent action and omission**

50.    New Century and Defendants willfully withheld the February 5, 2003 LoanForce Support Plan.  This document proves that New Century and its counsel lied to the Court when they represented that they were surprised when the LoanForce software was keyed off.  The document unequivocally establishes that New Century and Defendants intentionally gave perjured testimony.  Additionally, it establishes that New Century was furtively working on an illegal design-around.

51.    The LoanForce Support Plan is a document created by VisionCore Consulting ("VisionCore") on February 5, 2003.  Any work performed by VisionCore for New Century that related in any way to LoanForce was requested and should have been produced in the Arbitration.    The LoanForce Support Plan was wrongfully withheld by New Century and Defendants.  The LoanForce Support Plan was material to Positive Software's case because it

---

[1] *See* http://www.susmangodfrey.com/ (last visited on August 13, 2007).

disproved Defendants' own claims of fraud. The LoanForce Support Plan also conclusively proved the intent element of Positive Software's fraud claims and violations of the Digital Millennium Copyright Act. The LoanForce Support Plan details New Century's efforts to design a "back door" to the LoanForce system in the event Positive Software keyed off the application program. This document proves not only that New Century and Defendants expected a cut-off due to their non-payment breach, but was working on an illegal design around. This document also proves that New Century's fraud claim was itself fraudulent and based on perjury.

**(b)      Second fraudulent action and omission**

52.     New Century and Defendants willfully withheld the document entitled "LoanForce Replacement Issues and Alternatives" (the "Lemieux Alternatives"). This document proves that New Century and its counsel lied to the Court when they represented that were surprised when the LoanForce software was keyed off. The document unequivocally establishes that New Century and Defendants intentionally gave perjured testimony.

53.     The document was authored by Lemieux. It is dated January 31, 2003, more than a week before Positive Software keyed off the LoanForce application software and the day after Positive Software had demanded an audit. The Lemieux Alternatives admit breach of the Software Subscription Agreement for non-payment -- a fact New Century denied in the Arbitration -- and also disprove New Century's fraud claims. The Lemieux Alternatives were never produced in the Arbitration precisely because the document contains several outcome-determinative admissions later contradicted by perjurious testimony.

**(c)      Third fraudulent action and omission**

54.     New Century and Defendants willfully withheld the November 2000 version of the LoanForce Database SQL Source Code. This document proves that New Century created the

disputed tables after LoanForce was delivered.   After fraudulently suppressing this critical document, Camiña and Barnett argued the "absence" of this evidence defeated Positive Software's copyright claims.

55.    This document was allegedly "discovered" and disclosed to Camiña and Barnett only three days after Positive Software's counsel had last requested the earliest version of the LoanForce program in New Century's possession.  Despite discovery requests and orders from the Arbitrator that all versions of LoanForce be produced, the November 2000 version was never produced by New Century or Defendants.  When this document was discovered by Norment, Camiña never corrected Norment's testimony denying its existence weeks earlier – testimony that was utilized and offered into evidence at the Arbitration.

### (d)    Fourth fraudulent action and omission

56.    New Century and Defendants fraudulently represented to the Court that the LoanForce Application source code and database SQL code was stored only on individual personal computers and not stored on any servers.  In fact, New Century and its counsel willfully withheld the fact that LoanForce Application source code and database SQL code resided on the Nitrogen server, and thus was available to the programmers for copying.  This fraudulently concealed fact allowed New Century to prevail and defeat Positive Software's motion for preliminary injunction and allowed New Century to avoid Positive Software's claims of copyright infringement and specific performance to return the software.  New Century and Defendants willfully misrepresented that the software developers had no access to the LoanForce Application source code when they knew this statement was false, allowing them to avoid the presumptions associated with such access.

57.     In particular, New Century consistently swore in interrogatory responses that "[t]he LoanForce application resided only on PC's used by the users – not on any server." New Century and its counsel willfully withheld that both the LoanForce Application source code and the database SQL code resided on the Nitrogen server, a "development server".   Thus, LoanTrack, LoanTrack II, and mLOS were available to programmers for copying, and were available for New Century and its counsel to return to Positive Software, a fact New Century and Defendants denied during the Arbitration in order to prevail on Positive Software's specific performance claims seeking return of licensed products. This effectively was a denial that any programmers for the LoanTrack, LoanTrack-2 and mLOS application software were provided access to the LoanForce application software. The statements in the interrogatory responses under oath were false and constitute perjury.

(e)     **Fifth fraudulent action and omission**

58.     New Century's counsel, Barnett, made several other express fraudulent representations to the Court, namely, that:  (1) New Century had no intention of ever using again the LoanForce Application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon; (2) New Century would delete or return all LoanForce software, including application software and the LoanForce database, no later than April 25, 2003; (3) New Century would not use LoanTrack-2 for telemarketing or any other commercial purpose before May 12, 2003; and (4) additional injunctive relief would not be necessary, and under New Century's expert's supervision, New Century had removed any danger of imminent harm to Positive Software's interests.  All of these statements were false.

---

E.     POST-ARBITRATION LITIGATION

59.     The basis of the Award would have been refuted by this evidence had it been provided.  Thus, the Award is the product of New Century's and Defendants' willful concealment of material evidence, fraudulent misrepresentations, and perjurious testimony.  Indeed, it is likely that had New Century's counsel not been forced to produce documents by the Court's earlier crime-fraud finding and the hiring of additional counsel, Positive Software would have never have learned of the pervasive fraud.

60.     On September 28, 2004, this court vacated the Award on one of the numerous grounds upon which Positive Software had urged vacatur.

61.     New Century appealed the vacatur to the United States Court of Appeal for the Fifth Circuit.

62.     On January 11, 2006, the Fifth Circuit Panel of Circuit Judges Reavely, Garza, and Benavides affirmed the Vacatur.  But on January 17, 2007, the Fifth Circuit, *en banc*— applying a new standard—reversed the Vacatur and remanded the case to this Court for further proceedings.

63.     Positive Software has again moved for vacatur of the Award on numerous grounds, including on the ground that the Award was procured through the fraud of New Century and Defendants.

## IV.

## CAUSES OF ACTION

A.     **Federal Copyright Infringement**

64.     Positive Software realleges each and every allegation set forth in paragraphs 1 through 63 above as if fully set forth herein.

65.     Positive Software owns all rights and title in and to its proprietary software TeleTrend and LoanForce, which Positive Software has formalized by seeking and obtaining federal registrations.

66.     By making, using, and distributing unauthorized copies of Positive Software's TeleTrend and LoanForce software after entry of the preliminary injunction, the Defendants have infringed Positive Software's copyrights therein.

67.     Positive Software is entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts.  The amount of damages cannot be determined at this time.  Positive Software is further entitled to recover from Defendants their profits which were obtained as a result of their infringing acts.  Positive Software is also entitled to recover its attorneys' fees for bringing this action under the Copyright Act of 1976.

**B.      Fraud**

68.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.     Defendants, individually and in their capacity as agents of other Defendants, made the following materials misrepresentations and/or omissions to Plaintiffs and the Court:

(a)      Defendants Norment and Nese testified, under penalty of perjury, that they were surprised when Positive Software keyed off the LoanForce software.  Defendants Camiña and Barnett offered that testimony knowing it was false;

(b)      Defendants Susman Godfrey, Barnett, and Camiña knowingly withheld evidence that showed that the testimony of Defendants Norment and Nese was false; specifically, the LoanForce Support Plan and LoanForce Replacement Issues and Alternatives;

(c)     Defendants Susman Godfrey, Barnett, and Camiña knowingly withheld the November 2000 version of the LoanForce Database SQL Source Code, and then argued its non-existence to defeat Positive Software's claims;

(d)     Defendants Susman Godfrey, Barnett, and Camiña never corrected the record regarding Defendant Norment's false testimony that all versions of the LoanForce Database SQL Source Code had been produced, even after learning that Defendant Norment discovered the November 2000 version;

(e)     Defendants Susman Godfrey, Barnett, Camiña, Nese, Norment, and Lemieux falsely claimed that Positive Software's proprietary and copyrighted software was stored only on stand-alone machines, when in fact Defendants knew that the software was stored on the Nitrogen server; and

(f)     Defendant Barnett, and by extension Defendant Susman Godfrey, falsely stated that (1) New Century had no intention of ever again using the LoanForce Application software, the LoanForce database, LoanTrack, LF_Moon, or LTK_Moon; (2) New Century would delete or return all LoanForce software, including application software and the LoanForce database, no later than April 25, 2003; (3) New Century would not use LoanTrack-2 for telemarketing or any other commercial purpose before May 12, 2003; and (4) additional injunctive relief would not be necessary, and under New Century's expert's supervision, New Century had removed any danger of imminent harm to Positive Software's interests.

70.     The foregoing representations and omissions were false, and Defendants knew they were false at the time they were made.  Further, Defendants intended that Positive Software and the Court rely on those statements.  The Court did in fact rely on the false statements in entering an injunction far narrower than the facts required.

71.     Plaintiffs are entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as alleged above.

### C.      Civil Conspiracy

72.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 71 above as if fully set forth herein.

73.     Defendants conspired together to materially misrepresent and conceal facts and evidence during the Related Litigation in order to fraudulently obtain a favorable result.

74.     As a direct result of Defendants' fraudulent acts, the defendants in the Related Litigation obtained a favorable arbitration award.

75.     Plaintiffs have expended enormous financial resources and several years in attempting to overcome the fraudulently obtained arbitration award.  Plaintiffs are entitled to recover from Defendants the damages it has sustained and will sustain as a result of Defendants' wrongful acts as alleged above.

76.     After the adverse reward, Edward Mandel was forced to sell Positive Software at a fire-sale price to ensure cash was available for an appeal bond.  The difference between the sale price and Positive Software's value was tens or hundreds of millions of dollars.

### D.      Respondeat Superior

77.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 76 above as if fully set forth herein.

78.     Plaintiffs were injured as a result of Defendants' fraudulent acts, including those of Defendants Barnett and Camiña.  Defendants Barnett and Camiña are partners in the law firm of Defendant Susman Godfrey who provided legal services to New Century and several of the Defendants.

79.     Defendants Barnett and Camiña committed these fraudulent acts in furtherance of Defendant Susman Godfrey's business, in the context of their legal work for New Century and the other Defendants, and with the authority of Defendant Susman Godfrey.

80.     In committing their fraudulent acts, Defendants Barnett and Camiña were acting within their scope as partners in Defendant Susman Godfrey.

81.     Accordingly, under the theory of Respondeat Superior, Defendant Susman Godfrey is vicariously liable for the fraudulent acts of its partners and agents, Defendants Barnett and Camiña.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1)      That Defendants be held to have infringed Positive Software's copyrights in its software since the termination of the License Agreement;

2)      That Defendants be held to have committed fraudulent acts and omissions during the Related Litigation;

3)      That Defendants be held to have conspired together to defraud Plaintiffs in the Related Litigation;

4)      That judgment be entered for Plaintiffs against Defendants, for Plaintiffs' actual damages, and for any additional profits attributable to infringements of Plaintiffs' copyrights, or alternatively, that judgment be entered against Defendants for statutory damages based upon Defendants' acts of infringement;

5)      That Defendants be required to account for all gains, profits, and advantages from their acts of infringement and for their other violations of law;

6)      That judgment be entered for Plaintiffs for the damages they would have been awarded in the Arbitration absent such fraud to the fullest extent permitted by law;

7)      That Plaintiffs have judgment against Defendants for Plaintiffs' costs and attorneys' fees;

8)      That the Court grant such other, further, and different relief as the Court deems just and proper;

9)      That Plaintiffs be awarded punitive damages; and

10)     That Plaintiffs be awarded all damages incurred as a consequence of or related to Defendants' fraud, including the diminution of the value of Positive Software as an acquisition or merger target.

## V.

## JURY DEMAND

In accordance with FED. R. CIV. P. 38 and 39, Plaintiffs assert their rights under the Seventh Amendment of the United States Constitution and demand a trial by jury on all issues.

Dated:     August 20, 2007                    Respectfully submitted,


Michael W. Shore, Attorney in Charge
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Justin B. Kimble
State Bar No. 24036909
SHORE CHAN BRAGALONE LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
jkimble@shorechan.com

**ATTORNEYS FOR PLAINTIFFS
POSITIVE SOFTWARE SOLUTIONS,
INC.  AND EDWARD MANDEL**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
POSITIVE SOFTWARE SOLUTIONS, INC.
AND EDWARD MANDEL

**DEFENDANT(S)**
SUSMAN GODFREY LLP
OPHELIA F. CAMINA
BARRY C. BARNETT
FRANK NESE
JEFF LEMIEUX
JOHN NORMENT

**3*07CV1422-N**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED
PLAINTIFF  Denton County, Texas
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED
DEFENDANT Harris County, Texas
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE:   IN LAND CONDEMNATION CASES, USE THE
LOCATION OF THE TRACT OF LAND
INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Michael W. Shore
Shore Chan Bragalone LLP
325 North Saint Paul Street-Suite 4450
Dallas, Texas 75201     (214) 593-9110 Telephone
(214) 593-9111 Facsimile

ATTORNEYS (IF KNOWN)
UNKNOWN

RECEIVED
AUG 2 0 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

RECEIVED
AUG 2 0 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**II.   BASIS OF JURISDICTION**   (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE
(For Diversity Cases Only)   BOX FOR PLAINTIFF AND
ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizenship of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | X 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   NATURE OF SUIT**   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury- | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employ- | Injury Product | ☐ 650 Airline Regs. | ☒ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | ers' Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **LABOR** | ☐ 875 Customer Challenge 12 |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. | ☐ 864 SSID Title XVI | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to | Reporting & Disclo- | ☐ 865 RSI (405(g)) | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Vacate Sentence | sure Act | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | Determination Under Equal |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor | ☐ 870 Taxes (U.S. Plaintiff | Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Litigation | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

**V.   ORIGIN**   (PLACE AN "X" IN ONE BOX ONLY)

| | | | | Transferred from | | Appeal to District Judge |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 from Magistrate Judge |

**VI.   CAUSE OF ACTION**   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Action under 17 U.S.C. § 101 et seq. for infringement of copyright.

**VII.   REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ unspecified    CHECK YES only if demanded in complaint:   JURY DEMAND:   ☒ YES ☐ NO

**VIII.   RELATED CASE(S) IF ANY**   (See instructions):   JUDGE  Godbey  Pending    3:03-CV-0257-N    DOCKET NUMBER Pending
(See attached sheet for other related cases.)

DATE    SIGNATURE OF ATTORNEY OF RECORD
August 20, 2007

**FOR OFFICE USE ONLY**
RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____