IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| POSITIVE SOFTWARE SOLUTIONS, INC., AND EDWARD MANDEL, § § § *Plaintiffs*, § § § § CIVIL ACTION NO. 3:07-cv-1422-N § SUSMAN GODFREY L.L.P., § JURY TRIAL DEMANDED OPHELIA F. CAMIÑA, and § BARRY C. BARNETT § § *Defendants*. § | |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY MATERIAL RESPONSIVE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION AND THE SUBPOENAS DUCES TECUM SERVED ON BAKER BOTTS, LLP AND BECK, REDDEN & SECREST, LLP**

Plaintiffs Positive Software Solutions, Inc. and Edward Mandel (collectively "Plaintiffs" or "Positive Software") move the Court (1) to compel Defendants Susman Godfrey, L.L.P., Barry Barnett, and Ophelia F. Camiña (collectively "Susman Godfrey") to produce material responsive to Positive Software's First Set of Requests for Production ("First Set of RFPs")[1]; (2) to compel Defendants' counsel, Baker Botts LLP ("Baker Botts") to produce material responsive to Positive Software's June 15, 2009, Subpoena Duces Tecum ("Baker Botts Subpoena")[2]; and (3) to compel Defendants' counsel, Beck, Redden & Secrest, LLP ("Beck, Redden & Secrest"), to produce material responsive to Positive Software June 15, 2009, Subpoena Duces Tecum ("Beck, Redden & Secrest Subpoena").[3]

---

[1] Declaration of Patrick Traister ("Traister Decl."), ¶ 3 & Exhibit 2 ("First Set of RFPs").
[2] *Id.* ¶ 3 & Exhibit 1 ("Baker Botts Subpoena") at 10-11.
[3] *Id.* ¶ 3 & Exhibit 8 ("Beck, Redden & Secrest Subpoena").

## I.  INTRODUCTION

Baker Botts, Beck, Redden & Secrest, and Susman Godfrey continue to obstruct Positive Software's efforts to obtain discovery material that is relevant to the issues and claims in this case. Their refusals, however, are mere delay tactics—none has any basis to withhold the responsive material.

First, Baker Botts and Beck, Redden & Secrest (collectively "Counsel") refuse to produce any material relating to their communications with two non-party witnesses and their attorney. Even though neither of the non-party witnesses are Counsel's clients, Counsel nonetheless claim the material withheld is "privileged." These refusals are particularly egregious insofar as Counsel fails to specify upon which particular privilege it relies, much less how that privilege applies, and Counsel further refuses to produce a privilege log. To the extent any material Counsel claims is "otherwise protected" could qualify as "work product," the material still must be produced because Positive Software: (1) has a substantial need for this material, and (2) cannot obtain the requested material elsewhere. As a result, Counsel has no basis to withhold any of the material sought in the Baker Botts Subpoena or the Beck, Redden & Secrest Subpoena and thus, must immediately produce all requested documents.

Second, in response to Positive Software's First Set of RFPs, Susman Godfrey refuses to produce material that is highly relevant to the claims in this case. For example, Susman Godfrey objects to the production of its own financial information, including revenue, profits, and insurance-related materials, claiming, among other things, that the material is "private and confidential." However, the material is relevant because it will help establish the amount of punitive damages for which Positive Software seeks. The material sought is further relevant to the issue of Susman Godfrey's liability on Positive Software's fraud and

civil conspiracy claims. As such, Susman Godfrey must immediately produce material responsive to the First Set of RFPs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties' Disputes.

The dispute between Positive Software and Susman Godfrey stems from Susman Godfrey's fraudulent conduct in an effort to prevail in a related civil action styled *Positive Software Solutions, Inc. v. New Century Mortgage Corporation, et al.*, No. 03-CV-0257-N ("the Prior Litigation"). Specifically, Susman Godfrey, who served as lead counsel to New Century Mortgage Corporation ("New Century") in the Prior Litigation, conspired to defraud Positive Software before this tribunal and the related Arbitration in order to obtain a favorable ruling in the Arbitration. It did so by intentionally concealing documents, willfully withholding material evidence, including the November 2000 version of Positive Software's proprietary and copyrighted software called "LoanForce," offering perjured testimony, and fraudulently misrepresenting facts.[4] But for these fraudulent acts and statements, Positive Software would have received and collected millions of dollars in damages.[5] In light of this, Positive Software has asserted civil conspiracy, fraud, and copyright claims against Susman Godfrey in the instant case, and, among other things, Positive Software seeks punitive damages.[6] Discovery is ongoing.

### B. Susman Godfrey Refuses to Produce Responsive Documents.

On April 30, 2009, Positive Software served its First Set of RFPs on Susman Godfrey.[7] In request number 11 ("RFP 11"), Positive Software sought "All DOCUMENTS and DATA

---

[4] *See generally* Dkt. No. 90 at 1-57.
[5] *Id.*
[6] *Id.* at 47-57; *see also* Dkt. No. 1 at 22.
[7] *See* First Set of RFPs.

sufficient to detail the revenues and profits [per] partner for Susman Godfrey, LLP, from 2002 through 2008 (to be supplemented through 2009 and 2010 when the information becomes available), including the annual compensation for said time period paid to Barnett and Camiña."[8] Instead of producing the responsive material, Susman Godfrey objected, stating: "[w]e object to this request as seeking information that is not likely to lead to the discovery of admissible evidence. We further object on grounds that this information is private and confidential."[9]

Positive Software sought other financial information as well, including insurance-related materials. For example, in Request Number 18 ("RFP 18"), Positive Software sought "All DOCUMENTS and DATA related to … any and all insurance companies concerning the 2003 LITIGATION or THIS CASE," but Susman Godfrey refused stating: "Susman Godfrey's insurer has been kept advised of developments in the 2003 LITIGATION and THIS CASE, but those communications are covered by the attorney-client and work-product privileges. Otherwise, there are no responsive documents."[10]

Susman Godfrey objected to other requests as either "burdensome and not likely to lead to the discovery of admissible evidence," or "vague and overbroad."[11] Some material was withheld on the alleged basis that it was "covered by the attorney-client or work-product privileges."[12] Still others, Susman Godfrey responded that the "request makes no sense."[13] In all, Susman Godfrey failed to produce *any* pertinent material (other than one records retention document) that Positive Software requested in its First Set of RFPs.[14]

---

[8] *Id.* at 4.
[9] Traister Decl. ¶ 3 & Exhibit 3 ("RFP Responses") at 5.
[10] *Id.* at 6. As further examples, see Request for Production Nos. 8, 10, and 20. *Id.* at 4-7.
[11] *Id.* at 4-9.
[12] *See, e.g., id.*
[13] *See, e.g., id.*
[14] Traister Decl. ¶ 4.

**C.     After Conducting Two Non-Party Depositions, Positive Software Serves Subpoenas on Baker Botts and Beck, Redden & Secrest.**

During the Prior Litigation, former New Century Chief Technology Officer John Norment was heavily involved in New Century's purported "preservation" of electronic data.[15] On December 19, 2003, after Susman Godfrey represented to the Court and Positive Software that LoanForce was not accessible to any New Century employees because the so-called "purge" had been successful, Alicia Espinoza-Walsh emailed John Norment and told him that she found a copy of the November 2000 version of LoanForce on one of New Century's servers.[16] Norment clarified in an email to Camiña that the file was found on a *server* that had not previously been reviewed.[17] Despite this, on December 23, 2003, Camiña allowed Norment to testify under oath that he did not have access to LoanForce "other than on images and backups."[18] Because the November 2000 version of LoanForce was not produced during the Prior Litigation, the Arbitrator was unable to conclude that Positive Software's copyright was infringed.

   **1.     The John Norment Deposition.**

During his recent deposition, Norment stated that Baker Botts' attorney Rod Phelan initially sought to represent him, but Phelan apparently withdrew his offer when he became "concerned" about doing so.[19] Norment, who was then represented by Prater Monning of Monning & Wynne LLP, indicated that he never considered Phelan to be his attorney.[20] Although Norment met with Phelan several times, Norment was unable to recall any particular details of those meetings.[21] Norment did not know whether Phelan took notes during the

---

[15] *Id.* ¶ 3 & Exhibit 4 ("Norment Depo.") at 10-11.
[16] Traister Decl. ¶ 3 & Exhibit 5 ("Espinoza-Walsh Depo.") at 5-6.
[17] Norment Depo. at 104.
[18] *Id.* at 27.
[19] *Id.* at 39.
[20] *Id.* at 39-40.
[21] *Id.* at 35-44.

telephonic meetings.[22] A typical line of Norment's testimony about his meetings with Phelan reads as follows:

> Q. Well, you can't tell me anything word for word that was said, can you?
>
> A. I cannot tell you word for word what was said.
>
> Q. All right. And you're not even sure what was discussed the second call as between the second call and the first call; right?
>
> A. I could not sit here today and say this is exactly what we discussed on each call.[23]

Norment also stated that, at Phelan's request, he executed a declaration, which Phelan submitted in support of Defendant Ophelia Camiña's defense in another related proceeding.[24] Norment testified that he made suggestions and changes to the draft of the declaration that Phelan sent to him.[25] Specifically, Norment stated:

> When [he and Phelan] worked on it here, we ended up at I guess what you would call a draft version that [Phelan] asked me to look over, you know, make sure that everything was in – that was in the declaration was accurate. And we worked on it one more time after you were here. [Phelan] called me, and we worked on it on a conference call. And the results of that were this document, which [Phelan] then e-mailed to me. I printed out the document, signed it, scanned it, and sent it back to [Phelan].[26]

Even though Phelan deposed Norment extensively on the so-called "drafts" or "versions" of Norment's declaration, that material was not produced to Positive Software either before or during the deposition.[27]

Further specific examples of Norment's inability to "recall" information that he was asked during his deposition include:

---

[22] *Id.* at 35-36.
[23] *Id.* at 42-43.
[24] *Id.* at 21-24.
[25] *Id.* at 22-23.
[26] *Id.* at 22.
[27] *Id.* at 21-23.

(1)     MR. SHORE: That's an e-mail from you to Ophelia Camiña dated December 18th, 2003. And in that you sent her a LoanForce pdf. Do you see that?

       A.    I see that.

       Q.    Was that the LoanForce database script that ultimately was saved in the privileged file on the 19th?

       A.    *I don't recall*.[28]

(2)     Q.    And that's Exhibit 35. It shows that you received from Alicia Espinoza the full LoanForce database script.sql at 9:44 a.m.; correct?

       A.    That's the date or that's the time that's on the e-mail.

       Q.    How long after you received that did you contact Ophelia Camiña?

       A.    *I don't recall.*[29]

(3)     Q.    Let's look at Deposition Exhibit 37. (Document review>.) First of all, who is Anthony Taylor?

       A.    I remember the name, but *I don't recall his role or anything else*.[30]

(4)     Q.    Actually it was -- it wasn't two versions of LoanForce. It was the April 2003 version of LoanForce compared to LoanTrack, LTK Moon, and LF Moon; correct? That was the Norment analysis?

       A.    That sounds correct.

       Q.    And then she [Camiña] responds to you one minute later, "Yikes, do you want me to see if I can pull it?" And then it looks like 10 minutes later you send back an e-mail, this time you copied mark Malovos on it, whereas she had not, "If you don't want them to get it, YES! I thought that's why I sent it to you to evaluate whether things should go to him. I will try to be more careful and question you more in the future." And the "him" you're talking about is Dr. Pooch; correct?

---

[28] *Id.* at 63 (emphasis added).
[29] *Id.* at 65 (emphasis added).
[30] *Id.* at 70 (emphasis added).

PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES – Page 7

    A.    *I don't recall for sure, but it's possible.*

    Q.    Then it says -- this looks like about 11 minutes later, also on the 19th, "I just checked with Mark A." You understand that to be Mark Anderson, correct, her paralegal?

    A.    Yes.

    Q.    "They went out this afternoon. Yes, please do. When we discussed yesterday that Pooch should get your stuff, I assumed you understood that means the other side gets whatever he gets. I assumed this is not fatal and is just some work product that may make it easier for them to follow our analysis?" And then your response, it looks like about a couple hours later, "The spreadsheet in a work product. It has my analysis of what tables and columns compare between the databases. I'd rather they didn't get it, but not fatal. Can't Pooch just refuse to look at it?" And then she responds serially to several of you, "John: Yes, but my point is We already gave it to the other side." That's the Norment analysis. It has nothing to do with the November 9, 2000 version of LoanForce, does it?

    A.    *I don't recall. I don't think that that was in the Norment analysis, but I don't recall for certain.*

    Q.    But you also did an analysis of the November 9, 2000 version of LoanForce; correct?

    A.    *I don't recall.*[31]

(5)    Q.    BY MR. SHORE: Mr. Norment, I've got in front of you Exhibit 40. And in the e-mail chain between you and Miss Camiña on December 19th, the last e-mail on the 19th was at 2:23 p.m. Pacific Standard Time where it talks about where "I'm saying alternatively you can talk to Pooch first and maybe figure out what your file is, then we can decide if it helps and want to make this file available to the other side." Did I read that correctly?

    A.    Yes.

    Q.    Did you talk to Pooch?

    A.    *I don't recall.*

---

[31] *Id.* at 80.

> Q. And then the next e-mail in the string is on December 22nd, 2003 at 7:03 p.m. And I'm not sure if that's Central Standard Time or Pacific Time, because I don't know if this came from your outbox or Ophelia Camiña's inbox. But whichever time it is, it says "I have found a script that seems to be the creation of the LoanForce database dated 11/9/2000, 7:33:38 p.m. The file is called Full LoanForce Database Script.sql and is 904 kilobytes." That appears to be a cut and paste from your original e-mail of December 19th, 2003, which is also on the first page of Exhibit 40 -- sorry, the last page of Exhibit 40. Is that what you did? Did you cut and paste that first line of your December 22nd e-mail?
>
> A. *I don't recall. It's possible.*[32]

### 2. The Alicia Espinoza-Walsh Deposition.

Non-party witness Alicia Espinoza-Walsh was New Century's software development manager and was also involved in New Century's purported document preservation efforts during the Prior Litigation.[33] At the time of her recent deposition, Ms. Walsh was represented by Prater Monning.[34] During that deposition, Ms. Walsh had no recollection of any of the pertinent events in the Prior Litigation about which she was asked.[35]

An excerpt of Ms. Walsh's deposition testimony reads as follows:

> Q. And you understood that to be a version of the LoanForce database at the time you e-mailed it to Mr. Norment?
>
> A. Yes.
>
> Q. Did you speak to Mr. Norment about that e-mail and what you were e-mailing to him at or around that time?
>
> A. *I don't remember.*
>
> Q. Why did you e-mail that version of LoanForce to Mr. Norment?

---

[32] *Id.* at 82.
[33] Espinoza-Walsh Depo. at 5-6.
[34] *Id.* at 3.
[35] *See generally id.* at 5-10.

> A.   At the time, I was looking for anything that said LoanForce on it, and directing either the files or telling him where to go and find them.
>
> Q.   And where were you looking?
>
> A.   On servers.
>
> Q.   What servers were you looking on?
>
> A.   *I don't remember* the names of them.
>
> Q.   Do you know how that file or when that file got on whatever server you were looking on?
>
> A.   When *I don't remember.*
>
> Q.   Do you know how?
>
> A.   *I don't remember.*
>
> Q.   How many versions of the LoanForce database do you recall finding for Mr. Norment?
>
> A.   *I don't remember.*
>
> Q.   Was it more than one?
>
> A.   *I cannot remember.*
>
> Q.   Do you remember the first time that you discovered a version of the LoanForce database on a server or anywhere else?
>
> A.   *I don't even remember sending him this e-mail.*
>
> …
>
> Q.   Do you remember anything about LoanForce being reinstalled by you and Anthony Taylor on a computer at New Century?
>
> A.   *I don't even remember Anthony Taylor.*
>
> MR. PHELAN: Poor guy.[36]

---

[36] *Id.* at 6-8 (emphasis added).

### 3. Positive Software Subpoenas Baker Botts and Beck, Redden & Secrest; Both Refuse to Produce Responsive Documents.

On June 15, 2009, Positive Software served the Baker Botts Subpoena and the Beck, Redden & Secrest Subpoena requesting all documents exchanged between Counsel and non-party witnesses Norment and Espinoza-Walsh.[37] Counsel objected to those requests "on the grounds that [they] seek[] privileged or other protected information."[38] Positive Software also requested "All documents referring to, relating to, or evidencing any communications with ESPINOZA or NORMENT, including without limitation: (a) Notes; (b) E-mails; (c) Calendar entries; (d) Memoranda; or (e) Any other type of document generated based on communications with ESPINOZA OR NORMENT."[39] Baker Botts objected, stating:

> Baker Botts objects to this request for production on the grounds that it seeks privileged or other protected information. Baker Botts further objects to this request as overly broad, unduly burdensome, harassing, and not reasonably calculated to lead to the discovery of admissible evidence as it seeks all documents referring to, relating to, or evidencing <u>any</u> communications with Espinoza or Norment, unlimited by topic, substance, or other party to the communication. Baker Botts further objects to this request as unduly burdensome and unreasonably duplicative on the grounds that it seeks documents already in the possession, custody, or control of Plaintiffs.[40]

Beck, Redden & Secrest asserted an almost identical objection.[41] Positive Software requested similar information concerning Counsel's communications with Norment and Espinosa-Walsh's attorney, Monning, but Counsel objected to those requests on the same grounds.[42]

With respect to Positive Software's request that Counsel produce a privilege log, Baker Botts stated:

---

[37] *See* Baker Botts Subpoena, Beck, Redden & Secrest Subpoena.
[38] *See* Traister Decl. ¶ 3 & Exhibit 6 ("Baker Botts Subpoena Responses") at 3-5; Exhibit 9 ("Beck, Redden & Secrest Subpoena Responses") at 6-8.
[39] *See* Baker Botts Subpoena at 12.
[40] Baker Botts Subpoena Responses at 4.
[41] Beck, Redden & Secrest Subpoena Responses at 7.
[42] Baker Botts Subpoena Responses at 3-5; Beck, Redden & Secrest Subpoena Responses at 8.

> Baker Botts objects to Plaintiffs' request that Baker Botts log its privileged and otherwise protected materials as unduly burdensome, harassing, and calling for the discovery of privileged and otherwise protected information in that Plaintiffs ask their adversaries' lawyers to provide an index of his privileged and protected communications and materials created and gathered in preparation for trial against Plaintiffs.  Baker Botts further objects to Plaintiffs' request for a log of 'any and all documents and things that are … withheld from production but otherwise concern the items and categories set forth above' as vague, overly broad, and unduly burdensome to the extent that it purports to require Baker Botts to log non-responsive materials.[43]

Beck, Redden & Secrest asserted a similar objection to production of a privilege log.[44]

### III.  ARGUMENT AND AUTHORITIES

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26, parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."[45] "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[46]  "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."[47]

**A.  Baker Botts and Beck, Redden & Secrest Must Produce the Material Sought in the Subpoenas.**

In both subpoenas, Positive Software requested Counsel to produce all material and communications relating to any exchanges it had with Norment and Espinoza-Walsh.[48]  These exchanges occurred in preparation for the third-party witnesses' depositions and declarations.[49] Significantly, Baker Botts' attorney, Rod Phelan, extensively questioned Norment about some of

---

[43] Baker Botts Subpoena Responses at 5.
[44] Beck, Redden & Secrest Subpoena Responses at 9.
[45] FED.R.CIV.P. 26(b)(1).
[46] *Id.*; *see also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (noting that Rule 26(b)(1)'s specification "'relevant to the subject matter involved in the pending action'--has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").
[47] FED.R.CIV.P. 37(a)(3)(A).
[48] Baker Botts Subpoena at 5-12; Becks, Redden & Secrest Subpoena at 6-7.
[49] *See generally* Norment Depo.; Espinoza-Walsh Depo.

this material during his deposition.[50] As but one example, Phelan asked Norment about the various drafts of his latest declaration.[51] Both the declaration and any drafts thereof are integral to Positive Software's civil conspiracy and fraud claims because, among other things, the material is indicative of whether Camiña knowingly suborned Norment's perjured testimony during the Prior Litigation.[52] Counsel cannot seriously claim that this or any other material sought in the Baker Botts Subpoena or the Beck, Redden & Secrest Subpoena is irrelevant.[53]

Moreover, Counsel's claim that the material is "privileged" simply lacks merit. First and foremost, Counsel fails to specify upon which "privilege" it relies or how any purported privilege applies, and it refuses to produce a privilege log identifying as much.[54] However, for the reasons discussed below, both the attorney-client privilege and the common interest privilege are inapplicable. Further, to the extent that any of the requested material could be considered "work product," it all nonetheless must be produced because Positive Software has a substantial need for the materials and cannot obtain their substantial equivalent by any other means. For these and the reasons discussed below, Positive Software respectfully requests the Court to grant its motion and compel Counsel to immediately produce all withheld material responsive to the Baker Botts Subpoena and the Beck, Redden & Secrest Subpoena.

      **1.**      **The Responsive Material is Not Attorney-Client Privileged.**

The attorney-client privilege protects from disclosure "communications from the ***client*** to the attorney made in confidence for the purpose of obtaining legal advice."[55] "[T]he privilege

---

[50] *See* Norment Depo. at 21-24, 35-44.
[51] *Id.* at 21-24.
[52] *See* Traister Decl. ¶ 3 & Exhibit 7 ("Norment Declaration").
[53] FED.R.CIV.P. 26(b)(1); *see also Oppenheimer Fund,* 437 U.S. at 351.
[54] Baker Botts Subpoena Responses at 3-5; Beck, Redden & Secrest Subpoena Responses at 6-7.
[55] *Wells v. Rushing,* 755 F.2d 376, 379 n.2 (5th Cir. 1985) (emphasis added).

exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."[56]

Neither Baker Botts nor Beck, Redden & Secrest represents the non-party witnesses.[57] To that end, Norment specifically testified that he *never* had an attorney-client relationship with Baker Botts.[58] Instead, both Norment and Espinoza-Walsh are represented by Prater Monning of Monning & Wynne.[59] As no attorney-client relationship ever existed between Counsel and either Norment or Espinoza-Walsh, the attorney-client privilege is altogether inapplicable.[60] Counsel must immediately produce all communications, notes, drafts of declarations, and other materials relating to its meetings and exchanges with non-parties Norment and Espinoza-Walsh as set forth in both subpoenas.[61]

### 2. The Common Legal Interest Privilege is Inapplicable.

In certain limited cases, courts have found that the attorney-client privilege exists where a confidential communication is made to a non-client third party, but only if that third party "has a common legal interest with respect to the subject matter of the communication."[62] In the Fifth Circuit, there are only two types of common legal interest: (1) communications between co-defendants in actual litigation and their counsel, and (2) communications between potential co-

---

[56] *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).
[57] *See* Norment Depo. at 39-40; Espinoza-Walsh Depo. at 3.
[58] Norment Depo. at 39-40.
[59] *Id.;* Espinoza-Walsh Depo. at 3.
[60] *See, e.g., United States v. Blackburn,* 446 F.2d 1089, 1091 (5th Cir. 1971) (noting that communications were not attorney-client privileged because they were made in the presence of a third person); *see also Hill v. Hunt*, 2008 WL 4108120, at *7 (N.D. Tex. Sept. 4, 2008) (indicating that no attorney-client privilege would attach if defendant were not a "client").
[61] *See* FED.R.CIV.P. 26(b)(1).
[62] *Aiken v. Texas Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 (E.D. Tex. 1993) (citations omitted) (citing *In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D. Tex. 1981)).

defendants and their counsel.[63]  In the latter case, there must be a "palpable threat of litigation at the time of the communication."[64]

Neither of these two recognized "common legal interests" exists here.  First, Norment and Espinoza-Walsh are not co-defendants in this litigation.[65]  Second, Norment and Espinoza-Walsh are not even *potential* co-defendants with Susman Godfrey, Camiña, or Barnett because Positive Software expressly released Norment and Espinoza-Walsh from potential civil liability.  Thus, there is no "palpable threat of litigation at the time of the communication."[66]  The common legal interest privilege simply does not apply, and Counsel must immediately produce all withheld material that is responsive to both subpoenas.

    **3.    Counsel has not Established That the Material is "Work-Product."**

The work product doctrine, codified at FEDERAL RULE OF CIVIL PROCEDURE 26(b)(3), prevents unrestrained discovery of documents prepared by a party or his representative in anticipation of litigation.[67]  However, work product may be discovered if the moving party "has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[68]

Both Norment's and Espinoza-Walsh's perspectives of the events in the Prior Litigation are significant and highly relevant to the claims and defenses in this case.  Camiña permitted Norment to perjure himself during his deposition in the Prior Litigation.[69]  Specifically, Norment testified under oath that he essentially had no access to LoanForce "other than on images and

---

[63] *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).
[64] *Hill*, 2008 WL 4108120 at *7 (explaining that the common legal interest privilege exists only when there is a "palpable threat of litigation at the time of the communication.").
[65] *See* Dkt. No. 90.
[66] *Hill*, 2008 WL 4108120 at *7.
[67] FED.R.CIV.P. 26(b)(3).
[68] *See id.*; *Upjohn Co.*, 449 U.S. at 398; *In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982).
[69] *See generally* Dkt. No. 90; Norment Depo. at 26-28.

backups,"[70] even though Espinoza-Walsh emailed Norment just a few days earlier that she discovered the critically sought-after November 2000 version of LoanForce on a New Century server. Significantly, Susman Godfrey had represented to the Court and Positive Software that New Century's employees had **no** access to any version of LoanForce and that LoanForce was completely purged from all New Century's servers.[71] Because Susman Godfrey did not produce the November 2000 version of LoanForce, and failed to even mention Espinoza-Walsh's discovery, the Arbitrator could not conclude that Positive Software's copyright was infringed. These non-party witnesses' knowledge of critical events during the Prior Litigation is indisputably discoverable.

As discussed, Counsel fails to state upon which particular privilege or immunity it relies. Instead, it generally objects on the basis that the material sought is either "privileged" or "other protected information."[72] It further brazenly refuses to produce a privilege log, arguing that the production of a privilege log would, in itself, call "for the discovery of privileged and otherwise protected information."[73] Putting aside the circular nature of this argument, Counsel simply may not withhold any material on the basis that it is "work product" because it has not established that: (1) the materials at issue are documents or tangible things (2) prepared in anticipation of litigation or for trial (3) by or for a party's representative (4) that contain the mental impressions, conclusions, opinions, or legal theories of an attorney.[74]

Norment's and Espinoza-Walsh's perspectives of the facts in the New Century litigation go to the very heart of the Susman Godfrey's conspiracy to defraud Positive Software. Thus,

---

[70] Norment Depo. at 27.
[71] *See, e.g.,* Dkt. No. 90 at 8.
[72] *See* Baker Botts Subpoena Responses at 3-5; Beck, Redden & Secrest Subpoena Responses at 6-9.
[73] *See* Baker Botts Subpoena Responses at 5; Beck, Redden & Secrest Subpoena Responses at 9.
[74] *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 136 (E.D. Tex. 2003); *see also* FED. R. CIV. P. 26(b)(5)(A) (specifying that a party seeking work-product protection must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

Positive Software has a substantial and compelling need for this information. Neither of these key non-party witnesses can "recall" crucial events for which they experienced first hand,[75] and there is no other source for this information. Accordingly, even if some of the documents sought could be classified as "work product," despite Counsel's failure to demonstrate as much, the Court nonetheless should order Counsel to immediately produce all such documents responsive to the Baker Botts Subpoena and the Beck, Redden & Secrest Subpoena.[76]

**B.     Susman Godfrey Must Produce the Financial Material Sought in Positive Software's First Set of RFPs.**

Susman Godfrey lodges multiple baseless objections and refuses to produce any pertinent responsive documents (other than the records retention document) sought in Positive Software's First Set of RFPs.[77] Most egregious is Susman Godfrey's refusal to produce information concerning Susman Godfrey's revenue and profits as expressly requested in RFP 11. Susman Godfrey objected to that request on the basis that the information was "private and confidential" and not likely to lead to the discovery of admissible evidence.[78] Susman Godfrey further objected to production of information relating to its insurance coverage.[79] Susman Godfrey's objections, however, are in stark contrast with controlling case law.

"[E]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded …."[80] More particularly, "[w]here punitive

---

[75] *See, e.g.,* Norment Depo. at 21-24, 35-44, 63, 65, 70, 80; Espinoza-Walsh Depo. at 5-10.
[76] *See* FED.R.CIV.P. 26(b)(3); *Upjohn Co.*, 449 U.S. at 398; *In re Sealed Case*, 676 F.2d at 809.
[77] Traister Decl. ¶ 4; *see generally* RFP Responses.
[78] RFP Responses at 5.
[79] *See id.* at 6-9. *See also Bank Brussels Lambert v. Chase Manhattan Bank, N.A*, 1996 WL 512287, at *4-5 (S.D.N.Y. Sept. 9, 1996) (rejecting plaintiff's assertions that insurance-related materials were irrelevant to issues of damages and to plaintiff's liability on conversion and fraud claims).
[80] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

damages are claimed, it has been generally held that the Defendant's financial condition is relevant to the subject matter of the action and is thus a proper subject of pretrial discovery."[81]

In its complaint, Positive Software expressly seeks punitive damages from Susman Godfrey.[82] On this basis alone, Susman Godfrey must produce the financial information that Positive Software requests.[83] Beyond this, however, the financial information and other materials are further relevant to the issue of liability on Positive Software's civil conspiracy and fraud claims. Specifically, those materials would likely establish: (1) whether Susman Godfrey conducted any internal investigation into Susman Godfrey's conduct; (2) any discipline that was instigated against them as a result; and (3) whether Susman Godfrey's insurer denied coverage due to the fraud and civil conspiracy charges and evidence asserted against Susman Godfrey. Accordingly, Positive Software respectfully requests the Court to compel Susman Godfrey to immediately produce the financial material requested in its First Set of RFPs.[84]

## IV.  CONCLUSION

For the reasons stated above, the Court should grant Positive Software's Motion to Compel and order: (1) Susman Godfrey to produce all relevant, non-privileged documents in its possession, custody, or control that are responsive to Positive Software's First Set of RFPs, (2) Baker Botts to produce all documents exchanged between non-party witnesses Norment and Espinoza-Walsh and their attorney as requested in the Baker Botts Subpoena, and

---

[81] *See Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977); *see also Nalco Chem. Co. v. Hydro Techs., Inc.*, 149 F.R.D. 686, 697-98 (E.D. Wis. 1993) (rejecting "defendants' unimpressive contention" that plaintiff was not entitled to its financial information even though punitive damages were claimed); *Fretz v. Keltner*, 109 F.R.D. 303, 310-11 (D. Kan. 1985) (granting motion to compel discovery of financial information from defendant because, *inter alia*, plaintiff had stated a claim for punitive damages); *Iosello v. Lawrence*, 2004 WL 442609, at *2 (N.D. Ill. 2004) (granting motion to compel requests for information about defendants net worth and supporting financial statements "[b]ecause plaintiff's punitive damage claims are at least minimally viable, [and] its request for financial information is relevant."); *Bob Barker Co., Inc. v. Ferguson Safety Products, Inc.*, 2006 WL 648674, at *2-3 (N.D. Cal. 2006) (granting order compelling the production of financial information including that on defendant's profits and net worth when party sought punitive damages).
[82] Dkt. No. 1 at 22; Dkt. No. 90 at 57.
[83] *See, e.g. Miller*, 76 F.R.D. at 140.
[84] FED.R.CIV.P. 26(b)(1).

(3) Beck, Redden & Secrest to produce all documents exchanged between non-party witnesses Norment and Espinoza-Walsh and their attorney as requested in the Beck, Redden & Secrest Subpoena. Further, to the extent the Court concludes that Susman Godfrey, Baker Botts, and Beck, Redden & Secrest improperly refuse to produce responsive material, Positive Software respectfully requests the Court award to Plaintiffs, reasonable attorneys' fees and costs, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 37(a)(3)(A).

Dated:  October 20, 2009

/s/ Michael W. Shore
Michael W. Shore, Attorney in Charge
State Bar No. 18294915
Alfonso Garcia Chan
State Bar No. 24012408
Patrick J. Conroy
State Bar No. 24012448
SHORE CHAN BRAGALONE LLP
901 Main Street-Suite 3300
Dallas, Texas 75202
(214) 593-9110 Telephone
(214) 593-9111 Facsimile
shore@shorechan.com
achan@shorechan.com
pconroy@shorechan.com

**ATTORNEYS FOR PLAINTIFFS POSITIVE SOFTWARE SOLUTIONS, INC.  AND EDWARD MANDEL**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Plaintiffs have conferred several times with counsel for the Defendants in connection with the specific issues raised in this motion, including, most recently, on or about the week of October 15. Defendants' counsel indicated that Defendants were opposed to Plaintiffs' Motion to Compel.

/s/ Michael W. Shore
Michael W. Shore

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed this **PLAINTIFFS' MOTION TO COMPEL DISCOVERY MATERIAL RESPONSIVE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION AND THE SUBPOENAS DUCES TECUM SERVED ON BAKER BOTTS, LLP AND BECK, REDDEN & SECREST, LLP** with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

> David J. Beck
> Murray Fogler
> BECK REDDEN & SECREST LLP
> 1221 McKinney Street-Suite 4500
> Houston, Texas 77010
> 713.951.3700 Telephone
> 713.951.3720 Facsimile
> dbeck@brsfirm.com
> mfogler@brsfirm.com
>
> Rod Phelan
> BAKER BOTTS LLP
> 2001 Ross Avenue-Suite 600
> Dallas, Texas 75201
> 214.953.6609 Telephone
> 214.661.4609 Facsimile
> rod.phelan@bakerbotts.com
>
> ATTORNEYS FOR DEFENDANTS
> SUSMAN GODFREY LLP, OPHELIA F. CAMIÑA,
> AND BARRY C. BARNETT

October 20, 2009                                          */s/ Michael W. Shore*
Date                                                              Michael W. Shore